The PacSmart Company, Inc. v. PacSmart, Inc.  The final case for argument this morning is 13-1445, DATCard Systems v. PacSmart, Inc. Mr. Stewart, I know you're ready. I may please the court, Paul Stewart of Kenobi Martins for the plaintiff and appellate, DATCard Systems. We think, with all due respect to the district court, that this is, at bottom, a simple case. The disputed claim terms are two simple, ordinary English words, data and automatically. These words are not so ambiguous or vague that they deprive the claim of meaning, and DATCard didn't use the specification to redefine these terms. Well, related data has no plain or ordinary meaning outside of the context in which it's used, does it? Well, the word data certainly does, and the word related certainly does. Well, that's true of every word. I mean, every word you can look in a dictionary and there's some meaning, but wasn't there a conclusion, even from the testimony of the experts here, that there was no really plain, ordinary meaning to one's world in the art of related data outside of the context in which it appears? No, I think what the experts on both sides testified to was that related data had no specialized meaning within the field of art, within the medical publishing technology's art. But I don't believe that either expert testified that related data as a whole or broken down into its individual parts didn't have ordinary meaning. Should I wait for you to look at what you have? No, go ahead. No, I can mount that task. Fair enough, Your Honor. Well, we do think that once the court should have looked at the ordinary meaning and saw that the specification didn't redefine or disavow the ordinary meaning, that really should have been the end of the court's analysis. The court should have applied the ordinary meaning, and as this court reiterated in Thorner, the patentee is free to choose a broad term and expect to obtain the full scope of the plain, ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope. Mr. Stewart, are you familiar with cases like Edwards Life Sciences or Bidford position from this court? They talk about a theory called interchangeable use, where maybe you have one buzzword in a claim, and then you go back and look at the written description, and it appears from reading the written description that that one buzzword is equated with a second buzzword, and they are used so consistently and interchangeably throughout the written description that one comes away with the view that the two sets of buzzwords mean the same thing. I don't think that's the case here. What you have here is you have the phrase related medical image data used throughout the specification, and in most instances and maybe all instances it was referring to an image, and that was the phrase that was used in the parent case in the claim term, and the parent case also specifically included the language stored in a standard medical imaging format to describe the related medical image data. And then you have the child case, the continuation case, where you now have the term related data, which is used much less frequently in the specification, and it omits specifically the phrase stored in the standard medical imaging format from the claim. So I think you've got a real contrast between those two terms, and it's not an interchangeability. Okay. It seems like when I saw the usage of the term related data throughout the specification, when you read it in the context and you look at how it points to your flow charts and your diagrams and then talks about the PACS storage system, it all seems to be geared back towards an understanding that we're talking about images. Well, there certainly is a detailed description of searching for related images. There's no question about that. That's the embodiment of discussing the greatest details, the embodiment that is most difficult to implement. And the data for which it searches in that context is what's in the header that's part of the image, right? That's part of the data. When there's a search for images, it's not just for images, but it's also for what's in the header. But our contention is that related data, particularly with the phrase stored in the medical imaging format dropped from the claims, related data is a broader term than under Thorner and Aventis and Arlington Industries and Inova and other cases, that it's entitled to the full scope of its ordinary meaning. And then you do, of course, look for the specification for context and to see if there's been a disavowal or a disclaimer and there simply hasn't been such a thing here. And we do think one of the district court's fundamental errors, as we see it, is that the district court didn't look for the ordinary meaning of the words related data at all. It simply went to the specification and gave no weight to the ordinary meaning. And it viewed the patents with suspicion because they are continuations. The court held on page 15 of the appendix that it must give extra weight to the specification in the case of continuations, and we think that's simply unsupported by this court's case law. And the extra weight given by the district court, we believe, was extreme. We believe that the court essentially substituted the preferred embodiment in the specification for the ordinary meaning of the claim terms, and that's where the court said that it's going to grant patent protection that ends at what the patentee disclosed and that the patentee should get what it disclosed. Mr. Stewart, can you tell me what's going on with dependent claim 5, which obviously depends from claim 1, where it talks about wherein the auditable trail of the selected medical image data includes a record of when the selected medical image data and the related medical image data were recorded onto the data storage medium. I mean, candidly, I think that that was a drafting error where claim 5 from the original parent case referred to related medical image data, and claim 1 from the parent case referred to related medical image data. And then when claim 1 of the continuation case was modified to specify related data, claim 5 was just overlooked, and the related medical image data language from claim 5 wasn't updated. So what's the best thing to do in circumstances like this? Are you saying claim 5 is invalid, indefinite, or are you saying claim 5 shouldn't be used as a way to attempt to understand claim 1? I think claim 5 provides very little guidance in terms of understanding claim 1 because it's not telling you what the meaning of the phrase related data is. It's using a different phrase, and I would submit that it's a narrower phrase. Without any antecedent basis. Without any antecedent basis. So it does suffer from a lack of antecedent basis. And if that means that claim 5 has a problem under Section 112, then that may be the case. Getting back to my argument, Your Honors, the end result of what the district court did when it substituted, in our view, the specification for the claims is, as I mentioned, it actually read into the claims a limitation from the parent case. And we think it's very clear from Arlington Industries and from just basic principles of claim differentiation that that's an inappropriate approach to take to claim construction. So under our case law, I'm not sure, I don't think that anyone would dispute that the specification, the written description, is relevant and the claims have to be read in the context of the written description. Can you point us to anything in the written description that supports your view of what the claim language means? Well, we do point in our briefs to the phrase, the use of the phrase medical exam data in Column 2. Related medical exam. Or searching medical exam data that are related. That's correct, Your Honor. That's what I'm referring to. And we think that is a broad disclosure of a search for related data that can be of any kind of data at all. But I also would refer the court back to cases such as Thorner where every attached piece was attached to the exterior of the device and wasn't embedded in the interior. And still the court found, based upon the plain language of the claims, notwithstanding the individual examples given in the specification, that the word attached was given its full ordinary meaning. Isn't this a little beyond just the examples? The description of the invention, the background of the invention, the summary of the invention, the name of the invention. Everything deals with medical image data. It's all over. So it's not just a matter of they talked about general stuff and then we have four examples and they're all involved in medical image data. This is everything that's said in the written description is dealing with medical image data. Am I wrong about that? We were just referring to a phrase that we believe is broader than that. The rest of the specification does deal with medical image data. It was our position in the district court, and we have not waived it on appeal, that the phrase medical image data actually means data relating to medical images. It's not necessarily limited strictly to images. Is that an issue before us? Is that something you briefed? No, we have not briefed that, Your Honor. Well, you're into your rebuttal. Okay, so I'll reserve it for rebuttal. Thank you, Your Honor. Mr. Holbrow? May it please the Court? I think the Court's actually identified the issues here. The Phillips case sets out the standard here. Yeah, but it's not terribly comforting when district court opinion begins with reliance on a dissent. As opposed to a majority opinion, which is kind of what happened here. So it's a struggle, is it not, to get by the kind of language that is included in many of our majority opinions. Well, no, I don't think so. I think Judge Fowler did a remarkable job in kind of discussing the types of analysis that's appropriate in doing anything like that. She seemed to hinge her claim construction on the theme of you get what you disclose. Is that what Phillips calls for? No, I think she talked about the dissent and you get what you disclose and the name of the game is a claim. But she relied on, I think, the Bell-Atlantic case, which is the term there was mode. And it specifically says that the case holds that the ordinary meaning of the non-technical term mode is sufficiently broad and amorphous that the scope of the claim language can be reconciled only with recourse to the written description. So is that your view here? And was there testimony or whatever? I recall in your brief you described testimony from the various experts. It seems to be one of the key factors is whether or not there's agreement, there's clear and ordinary meaning to the term. And your position is there's not. Correct, Your Honor. So what do you base that on? Both experts, when asked about meaning-related data and the related terms, confirmed that there wasn't any real meaning in the art. And that's what we're looking at. One's skilled in the art and reading the specification and written description of how they would come up. But just because it's not a technical term of art doesn't mean that it's not blindingly clear what the terms mean. Data that's related to the selected medical image. It's the... What's so hard about understanding that? Well, it's like thing or stuff, data. I mean, there's no... Information. Information, anything. That's hard to understand? It can be, yeah. It's so amorphous and ambiguous you need to rely on the specification and the written and the file history in order to determine what it actually means. Well, it seems to me part of the problem is I think what you're saying is not that it's hard to understand but that it only has meaning in context. And the concern I'm having, and maybe this is Judge Chen's problem as well, is why can't we find that context to give it meaning in the claim language itself? Why do we necessarily have to go beyond that to the spec? Well, I don't think... You need to read the spec. I mean, Phillips holds it. It's in the context of the spec and the file history. Well, what about his one, just as an aside, just to deter you a little bit. Your friend pointed at least to one mention in the spec. Yes, I think there's a reference to medical exam data which we would submit is also being used synonymously with image data. It clearly doesn't say diagnostic text reports which is what appellant is arguing is included in related data because there's nothing in the specification. And it's undisputed that there's nothing in the specification that mentions diagnostic text reports. But even exams, if you read the rest of the specification and you look at Figure 5, there's a flowchart that talks about exams and then right under it says related medical image data. So the concept that exam somehow means diagnostic text reports is clearly rebutted within the specification itself. Okay, so back to the point we were making which is even if we accept your view that the terms related data are amorphous, they're amorphous but in a context, you need to look at them in the context. And why is not the appropriate context to look at them, the claims themselves, rather than reaching out to the spec if we can find an ordinary meaning to them in the context of the claims? Well, we would submit that you can't find an ordinary meaning to them in the context of the claims. Both experts couldn't really identify an ordinary meaning to the terms  And if you look at the specification, the very first entry under the Summary of Invention at page 191 says, the claim system allows for digital medical image data to be produced on portable digital recording medium such as a CD. That's the claim system. If you go further, experts confirmed that there's nothing in the specification that suggested that related data can mean anything. Is it your view that you need under our case law an explicit disclaimer? Excuse me? Is it your view that you need an explicit disclaimer? And if it is, where is that explicit disclaimer? Our position is you don't need a specific disclaimer because the customary or ordinary meaning of the term related data made by one skill in the art at the time of the invention in the context of the specification and the file history, which would fill us all, would be that related data necessarily means selected medical image data. So is that a lexicography argument or is that... I don't even think you get to that. I think you get to the lexicography and you get to the disavowal if the definition of the... what the person of ordinary skill in the art would define it would be if you get that definition and you want to change it, then you need lexicography and you need a disavowal. But here, a person of ordinary skill in the art would define it as selected medical image data. So you would need a clear disavowal if you wanted to change that. And there's no way... Okay, so let me just make sure I understand. You don't believe there was a disavowal. You don't believe there was a lexicography. You believe there was something else here. There was some contextual usage of the term related data that in your mind informs the understanding of it. Is that... It's hard for me to distinguish between lexicography and reading the claims in the context of the specification and the file history because they seem to merge. So our position is that a person of ordinary skill in the art when defining the claim-related data in the context of the specification and the file history would conclude that it necessarily means selected medical image data. So it's based on the lexicography of the specification, but it's the primary definition that would be resulting. Are you familiar with Edwards Life Sciences or Bid for Position? Our general circuit cases from a few years ago? Yes, Your Honor, a little bit. And you brought that up with my colleague. I think that goes also if you read the specification. Every time... You didn't cite those cases in your brief, right? We did not cite those specific cases. And the district court didn't seem to rely on those cases. I do not believe the district court did. But I think you're right. Every time you see related data, related medical image data, they're used synonymously throughout the specification. They're interchanged without regard to the meaning. And that brings up Claim 5 of the 174 patent. We would submit that there is antecedent basis for related medical image data since related data is synonymous with related medical image data. There was nothing raised at the patent office during the exam that suggested anyone understood those terms to be different. One thing the courts already identified throughout the specification, Figure 1, the only importing sources of data are image importing. This is a CAT scan, MRI, ultrasound. Figure 2 talks about PACS as being getting the related image data. And this is interesting because we're trying to define the claim terms in the 2001 time period. And the PACS in 2001 were incapable of storing or distributing text. That was testified to by Pellent's own inventor that PACS systems only allowed text to be delivered in the 2005 or 2006 time period. So that also brings back looking at the claims and what a person more than a skill in the art in just reviewing the claims would conclude. And if you look at Claim 1 of 174, it says that the selected medical image data and the related data are all gathered from the same database, the PACS database. Well, in 2001, the PACS database necessarily could not provide text data. So by that alone, within the context of the claim, one of skill in the art would conclude that related data necessarily meant selected medical image data. Similarly, within the patent, the software that the inventor had before filing the patent application, which was named eFILM, could be used to search and burn medical image data, but it couldn't be used to search and burn text. And that was also testified to by Bister Wright. So again, a person more than a skill in the art is presumed to know how all the prior art, including this eFILM software, would conclude that they couldn't use this to search for text data. And then the file history, the inventor himself made a statement and a declaration that said that the application server allows users to select medical images of interest, search for additional medical images that are related to the selected images. So throughout the trial history and the specification, it's a consistent pattern that the only meaning of related data would be selected medical image data. Before your time runs out, say something about automatically. Yes, John. Firstly, if we were to agree with you on the first issue, do we reach the second issue? No, Your Honor, I don't think so. There's no need to get... I think the case would be over. I don't think there'd be... I think that was referenced in both briefs. Automatically is an interesting term. It's probably got a little more meaning than related data, but you still need to look at the specification and file history to determine what it means. Appellant cited to the CollegeNet case, which you're reviewing another specification and another file history, and the court came to a conclusion the meaning of automatically in that case. In this case, the specification has two references to the meaning of automatically. It says without prompting for user selection, and it says without asking for user direction. That wasn't mentioned in the CollegeNet case. I think Appellant is basically saying what was good in the CollegeNet case should apply here without really focusing on the differences and the special terms used within the specification. There's several limitations, though, that begin with the word automatically, right? Yes. Isn't that some indicator that we're talking about initiating each step? We're just talking about the function, the machine functioning. Not that every single step necessarily has to all flow together without any human intervention at all. Well, it's interesting. Not all the steps have automatically, and this is a... Except for the first step. Well, in connection with the 174 patent, automatically just appears once. Okay, I'm talking about the other patent. The other patent, it doesn't. It is except for the first step, but that first step also occurs automatically. I mean, we're talking about a computer system here, so what Pellant is arguing is that the final thing happens automatically. Well, the final thing happens automatically in a computer system regardless of what happens up front. I mean, the computer's going to do what the computer does based on the code. In this case, for example, in the 174 patent, the fourth limitation says a search module configured to automatically search the database for related data based on the user selection. If you take out automatically, there's really no difference in applying Pellant's proposed definition. What about that last phrase, based on user selection? Right. It would happen, but... I guess I don't understand the question. The step would happen based on user selection and would occur... And then the machine starts to run. Right. Basically, our interpretation of the whole claim is that the user selects images that it wants from a certain patient, and then based on that selection, everything else, the search module automatically goes and searches for related images. User initiated. Right. In this claim, the user initiation doesn't say it happens automatically. So the user initiation does occur based on... It's a truism. It does occur based on the user's input. But then the related images only have to come on... The final step of related images, the process of grabbing them and burning them onto a CD, happens based on... I mean, it occurs because it's a computer-based system, so it's automatically going to happen. So that final step has to happen automatically because of the system itself. So the insertion of the term automatically, in this case, our position is that it needs... It has to happen without any user intervention. And in our case, the media writer, you can select the images and then you... have multiple steps in between that before the diagnostic text reports are added to the CD. So it doesn't happen automatically. And the same analysis would be applicable to the other path. My time's up. Thank you very much.